IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ELLIOTT LOUIS KING, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING SECOND MOTION TO WITHDRAW GUILTY PLEA <br><br><br> Case No. 2:19-cr-00287-JNP <br><br> District Judge Jill N. Parrish |

Before the court is defendant Elliott Louis King's second motion to withdraw his guilty plea. ECF No. 246. The court DENIES the motion.

## BACKGROUND

An individual created an account on a messaging application called Kik, using the screen name "Louis King" and the profile name "louisckbd." The profile picture for the account was an image of a male torso displaying a unique tattoo. An undercover FBI agent initiated a conversation with the Louis King account user,[1] and, over the next few weeks, they exchanged a number of messages. The FBI agent used an application on his phone to record the Kik conversations with Louis King. The recording application did not run continuously, and the agent had to periodically restart the recording.

---

[1] Throughout this order, the court refers to the account user behind the Louis King screen name as "Louis King." The court refers to defendant Elliott King as "King."

In the Kik messages, the Louis King account user expressed an interest in the sexual abuse of children. The undercover agent asked him to send child pornography through Kik. Louis King sent several images of child pornography and a link to videos of possible child pornography.

The government subpoenaed records from Kik and Verizon to ascertain the identity of Louis King. It asked Kik to provide customer records for the Louis King account, including records of internet protocol addresses (IP addresses) used to access the account. The government did not ask Kik to produce chat logs for the FBI agent's conversations with Louis King, nor did it tell Kik to preserve the chat logs. Based on the records provided by Kik and Verizon, the government determined that defendant Elliott Louis King was the individual who had sent the images under the Kik screen name Louis King and charged him with distribution of child pornography.

The government seized King's phone and forensically examined it. But it did not find any child pornography or any digital record of the Kik conversations. The government believed that King had wiped this information from his phone before it had seized the device. Investigators discovered that King had the same distinctive tattoo in the same location depicted in the profile picture for the Louis King Kik account. The government provided screen shots of the FBI agent's recordings of the Kik conversations to King's defense counsel during discovery. But it did not provide the actual recordings, and defense counsel did not request to examine them.

King was initially represented by a federal public defender. The public defender hired a forensic computer examiner to review the electronic evidence the government intended to use to prove its case. Additionally, King independently hired a forensic computer examiner, Michele Bush, to review the evidence. In January 2022, King hired Alexander Ramos, who replaced the public defender as defense counsel. In February 2022, Bush spoke to Ramos about her opinions regarding the government's evidence. Bush also wrote a memo and provided it to Ramos. Bush

2

noted that because the government had not asked Kik to preserve the chat logs, they likely would have been deleted by Kik. Thus, the Kik chat logs were not available to corroborate the recordings made by the undercover FBI agent. Ramos, however, decided not to pursue a motion to exclude the Kik chat recordings based on the absence of corroborating Kik chat logs. Nor did he hire another computer forensic expert.

The parties indicated that King would likely go to trial, and the court entered a trial order establishing a January 30, 2023 trial date. Ramos filed a motion in limine to exclude the subscriber and IP address records that the government had obtained from Kik and Verizon. Ramos argued that the government could not authenticate the documents and that they were inadmissible hearsay. Ramos contended that without the Kik and Verizon records, the government could not tie King to the Louis King Kik account. On January 19, 2023, the court heard argument on the motion in limine. On January 25, 2023, the court held an evidentiary hearing to allow the government to present authentication testimony. On Friday, January 27, 2023, the court issued an order denying the motion in limine. The court reasoned that the government's evidence that the records had been provided by Kik and Verizon pursuant to a subpoena was sufficient to authenticate the documents. The court further ruled that the documents were not hearsay because they consisted of data recorded by a computer rather than a person.

Ramos discussed the court's order with King and advised him that because the court had not excluded the Kik and Verizon customer records, he would likely lose at trial. On Saturday, January 28, 2023, King agreed to change his plea, and the parties informed the court that the January 30, 2023 trial would not go forward.

On January 30, 2023, King signed a "Statement by Defendant in Advance of Plea of Guilty and Plea Agreement" (Statement in Advance of Plea). In this statement, King acknowledged that

he had knowingly distributed child pornography. Later that day, the court held a change of plea hearing. During the plea colloquy, the court reviewed the factual basis for King's guilty plea with him. King admitted that he had sent images depicting prepubescent children engaged in explicit sexual conduct with adults to an undercover officer over Kik. At the conclusion of the plea colloquy, King pled guilty to distribution of child pornography. The court set a sentencing date for May 31, 2023.

Immediately after changing his plea, King began contacting other attorneys to examine whether his guilty plea had been in his best interest. On February 6, 2023, King retained Murdoch Walker, who replaced Ramos as defense counsel. On April 14, 2023, Walker moved to continue King's sentencing date by 90 days, representing that extra time was needed to complete a psychosexual evaluation and to give the U.S. Probation Officer (USPO) assigned to his case time to incorporate the results of the exam into the presentence report. The court granted a continuance and set the sentencing hearing for September 13, 2023. At the request of the USPO, the court later set the sentencing hearing for October 20, 2023.

By Late April 2023, King had become concerned that Walker had not yet filed a motion to withdraw his guilty plea. King sent an email to Murdoch reminding him that time was of the essence. Due to Murdoch's complete lack of progress on a motion to withdraw, on June 6, 2023, King hired a new law firm to conduct a case review. On August 18, 2023, King retained the new law firm to represent him, and on September 7, 2023, Daniel DeMaria replaced Walker as defense counsel of record. On September 15, 2023, DeMaria moved to continue King's sentencing by 90 days to allow him time to review the case and prepare for sentencing. The court granted a continuance and set a sentencing date for January 18, 2024.

On October 17, 2023, about eight and a half months after King changed his plea, DeMaria filed King's first motion to withdraw his guilty plea, asserting two principal arguments. First, King asserted that his decision to enter a guilty plea was not knowing and voluntary because he did not understand that he would waive his right to appeal the court's denial of his motion to exclude the Kik and Verizon records. Second, King argued that he should be allowed to withdraw his guilty plea because the court failed to confirm that he understood that he would be able to "present evidence" if he elected to go to trial, as required by Rule 11(b)(1)(E) of the Federal Rules of Criminal Procedure. On August 6, 2024, the court denied King's motion. The court scheduled a sentencing hearing for October 23, 2024.

On October 15, 2024, new counsel appeared on behalf of King to replace DeMaria. That same day, King's new counsel moved to continue the sentencing by at least 60 days in order to accommodate a mental health evaluation for King and to give new counsel time to prepare for sentencing. The court granted the motion and continued the sentencing hearing until December 19, 2024.

On December 9, 2024, King's new counsel filed a second motion to withdraw his guilty plea. In this motion, King argues that the court should allow him to withdraw his guilty plea because his trial counsel (Ramos) had rendered ineffective assistance of counsel by failing to seek the exclusion of the government's recordings of the Kik conversations on the grounds that the recordings were so unreliable as to violate King's Due Process rights. King also asserts that Ramos was ineffective because he failed to challenge the court's pretrial ruling that the Kik and Verizon customer and IP address records were not hearsay. Finally, King contends that his change of plea was not knowing and voluntary because Ramos failed to advise him of the alleged evidentiary deficiencies of the government's Kik chat recordings.

## ANALYSIS

A defendant may withdraw a guilty plea before the court imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d). "The defendant bears the burden of establishing a 'fair and just reason.'" *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007). "Although a defendant's motion to withdraw a plea before sentencing should be 'freely allowed and treated with liberality,' a trial court's decision on this issue is nevertheless discretionary." *United States v. Graves*, 106 F.3d 342, 343 (10th Cir. 1997) (citation omitted).

Courts in the Tenth Circuit look to seven factors when determining whether to allow the withdrawal of a guilty plea: (1) whether the defendant asserted his innocence; (2) whether the plea was knowing and voluntary; (3) whether the defendant received ineffective assistance of counsel; (4) whether the defendant delayed in filing the motion; (5) whether there would be prejudice to the government; (6) whether there would be inconvenience to the court; and (7) whether judicial resources would be wasted. *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993). If the first three factors, which speak to the defendant's reasons for withdrawal, weigh against the defendant, the court need not consider the remaining four factors, which speak to the potential burden on the government and the court. *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009). Courts may also consider an additional factor: the likelihood of conviction if the defendant goes to trial. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1258 (10th Cir. 2014).

King asserts two reasons for granting leave to withdraw his guilty plea. He argues that he received ineffective assistance of counsel and that his plea was not knowing and voluntary. The court first analyzes these two proposed justifications for withdrawing his plea. The court then looks to the remaining withdrawal factors.

I.    INEFFECTIVE ASSISTANCE OF COUNSEL FACTOR

A.    *Legal Standard*

When a criminal defendant moves to withdraw a guilty plea based on a claim of ineffective assistance of counsel, courts apply the two-part test established in *Strickland v. Washington*. *United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). "First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. Specifically, "a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Id*. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. In order to show prejudice, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

King argues that his trial counsel's performance was deficient in three respects.

B.    *Failure to Move to Exclude the Kik Recordings*

King first contends that his trial counsel was ineffective because he did not move to exclude the recordings and screen captures of the Kik conversations made by the undercover FBI agent. Bush, the technology expert retained by King, provided a memorandum to Ramos criticizing the reliability of the government's recordings and screen captures of the Kik conversations. Bush faulted the government for failing to subpoena or preserve Kik's internal chat logs of the agent's conversations with the Louis King account user, asserting that without these chat logs, it was impossible to "validate" the screen captures produced by the government. Bush also opined that

7

because the FBI agent had to periodically restart the recordings of the chat logs, the government had not preserved a complete record of the agent's conversations with Louis King.

King argues that Ramos's performance was deficient because he did not move to exclude the recordings and screen captures. King does not suggest that any rule within the Federal Rules of Evidence would have required exclusion. Instead, King asserts that Ramos should have argued that the Kik recordings were so unreliable as to be inadmissible under the Due Process Clause of the Fifth Amendment.

"Only when evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,' [has the Supreme Court] imposed a constraint tied to the Due Process Clause."[2] *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (citation omitted). The Court has found that only a narrow band of evidence obtained through police misconduct meets this standard. For example, courts should exclude eyewitness identification evidence if (1) "law enforcement officers use an identification procedure that is both suggestive and unnecessary" and (2) the "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* at 238–39 (citation omitted). Moreover, a confession obtained by means of coercive police misconduct is inadmissible. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). And evidence obtained through police conduct that "shocks the conscience," such as forcibly pumping the stomach of a suspect to obtain drug evidence, is excludable. *Rochin v. California*, 342 U.S. 165, 172 (1952).

---

[2] The Supreme Court authorities cited in this order analyze the Due Process Clause of the Fourteenth Amendment because they dealt with state criminal prosecutions. Because the Due Process Clauses of the Fifth Amendment and the Fourteenth Amendment are interpreted in tandem, *Malinski v. New York*, 324 U.S. 401, 415 (1945), these Fourteenth Amendment authorities are relevant to this federal prosecution.

The Due Process Clause has not been applied to exclude evidence based solely on an assessment of its reliability. *Perry*, 565 U.S. at 245 ("We have concluded in other contexts . . . that the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair."). Due process concerns may lead to exclusion only in instances where the evidence has been tainted by improper state conduct. *Id*. In the absence of state misconduct, exclusion of evidence based on reliability concerns is "governed by the evidentiary laws of the forum . . . and not by the Due Process Clause." *Connelly*, 479 U.S. at 167. If the evidence is admissible under the relevant rules, the issue of reliability is left to the jury: "The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry*, 565 U.S. at 237; *see also id*. at 245 ("[T]he jury, not the judge, traditionally determines the reliability of evidence.").

Here, King argues that due process would have required the exclusion of the Kik recordings. He supports this contention by citing caselaw holding that in sentencing hearings, which are not governed by the Federal Rules of Evidence, *see* FED. R. EVID. 1101(d), the Due Process Clause requires courts to consider only evidence that satisfies a minimum level of reliability, *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'" (citation omitted)) (cited with approval in *United States v. Delgado-Lopez*, 974 F.3d 1188, 1193 (10th Cir. 2020)); *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (holding that a court's speculative reliance on a

9

defendant's bare arrest records during sentencing violated the Due Process Clause). King reasons that if the Due Process Clause demands that sentencing determinations be based on minimally reliable evidence, due process must also require courts to determine whether evidence presented at trial is sufficiently reliable.

King is wrong. As discussed above, the Supreme Court has consistently held that the admissibility of evidence at trial is governed by the relevant evidentiary rules and that courts should not examine the reliability of evidence under the Due Process Clause absent state misconduct. *Perry*, 565 U.S. at 245; *Connelly*, 479 U.S. at 167. Because King has made no allegations of government misconduct, he had no viable argument for the exclusion of the Kik recordings and screen shots based on assertions that they were unreliable.[3] Accordingly, Ramos did not provide deficient assistance of counsel by failing to move to exclude this evidence, and King's ineffective assistance of counsel claim fails under step one of the *Strickland* test.

C.    *Failure to Advise King of a Potential Trial Strategy*

In passing, King also argues that even if the court would have admitted the Kik recordings and screenshots over his objection, Ramos was ineffective because he did not advise King that he could have effectively disputed this evidence during trial through an expert witness. In essence, King suggests Ramos should have advised him that he could have prevailed at trial based on this strategy. The court finds, however, that Ramos's performance did not fall below "the range of competence demanded of attorneys in criminal cases." *See Strickland*, 466 U.S. at 687.

---

[3] Even if King could have moved to exclude the Kik recordings on due process grounds, he has not presented a convincing argument that the evidence is so unreliable that it should be excluded. For the same reasons discussed below in Part I.C, the court would not have excluded the Kik evidence based on reliability concerns.

King asserts that an expert could have informed the jury that the government failed to preserve the Kik chat logs and that the recording application used by the FBI agent did not retain a complete record of all of the messages he exchanged with the Louis King account user during their weeks-long conversation. But King has not presented any evidence that the recordings of the Kik chats made by the FBI agent were flawed in any respect such that a jury would have a reason to mistrust what the recordings plainly demonstrate: that the Louis King account user transmitted images of child pornography. The absence of the Kik chat logs to corroborate the recordings is of no consequence unless the recordings are unreliable. Moreover, the possibility that some messages were not recorded does not undermine the evidence in the recordings showing the transmission of child pornography—the actus reus of the crime to which King pled guilty. In short, the court finds that the expert testimony proposed by King would not have affected a jury's evaluation of the Kik recordings, which show that the Louis King account user distributed child pornography. Thus, Ramos did not provide ineffective assistance of counsel by failing to advise King that he could successfully challenge the Kik recording evidence at trial.

### D.      Failure to Challenge the Court's Hearsay Ruling

The government intended to introduce into evidence Kik account records showing the IP addresses used to log on to the Louis King account. The government also intended to introduce Verizon records for King's cellular service and Verizon records related to an IP address. These Kik and Verizon IP address records were vital to prove the government's contention that King was the individual who sent the child pornography via the Louis King Kik account. Ramos moved to exclude these Kik and Verizon records, arguing that they were inadmissible hearsay. On Friday, January 27, 2023, three days before the Monday, January 30, 2023 trial date, the court ruled that the records were not hearsay because they were computer generated. Based on the court's ruling

that the records were admissible, Ramos told his client that he no longer had a viable defense at trial and advised him to accept a plea deal. On Saturday, January 28, 2023, King accepted a plea deal with the government.

King now argues that Ramos's performance was deficient because he did not challenge the court's order. King contends that Ramos should have asked the court to reverse its ruling because it erred in concluding that the IP address information was computer generated without evidence. Setting aside the question of whether evidence is required in situations where it is obvious that Kik and Verizon did not employ an army of human employees to record IP addresses for logins in real time, King's assertion is simply wrong. At the evidentiary hearing held on January 25, 2023, the records custodians for both Kik and Verizon testified that the records in question were computer generated. ECF No. 214, pp. 74–75, 96–97. Thus, the court did not err in concluding that the assertions made in the records were not subject to the hearsay rule, and Ramos did not provide ineffective assistance of counsel by failing to ask the court to reconsider its ruling.

### E.   Conclusion

In short, each of King's claims of ineffective assistance of counsel fails under step one of the *Strickland* test because Ramos's performance was not deficient. Accordingly, King has not shown that the ineffective assistance of counsel factor justifies withdrawal of his guilty plea.

## II.   KNOWING AND VOLUNTARY FACTOR

King also argues that the court should allow him to withdraw his guilty plea because it was not knowing and voluntary. This argument is based entirely on his ineffective assistance of counsel contentions. King asserts that because his trial counsel failed to fully advise him of the ways in which he could challenge the records tying him to the distribution of child pornography, his waiver of his right to a jury trial was not knowing and voluntary. But, as discussed above, his trial counsel

was effective. Therefore, King's assertion that his guilty plea was not knowing and voluntary also fails.

## III.    THE BURDEN FACTORS AND LIKELIHOOD OF CONVICTION

Because King has not established a reason for permitting withdrawal of his guilty plea under either the ineffective assistance of counsel factor or the knowing and voluntary factor, his motion fails, and the court need not address the remaining four factors, which analyze potential burdens on the government and the court associated with the withdrawal of a guilty plea. *See United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009). The court notes, however, that the remaining factors support the court's ruling that King may not withdraw his guilty plea. The burden to the government, inconvenience to the court, and waste of judicial resources factors are neutral. Although the government and the court would have to expend time and resources for a trial, the court concludes that these are not alone sufficient reasons to deny a defendant's motion to withdraw a guilty plea. It is the function of both the court and prosecutors to facilitate a trial when necessary. King's delay in filing his motion, however, weighs against granting leave to withdraw his plea. He filed this second motion to withdraw his guilty plea almost two years after changing his plea. King faults his first post-conviction attorney for some of this delay. But even if the court discounts the period of time from January 30, 2023, when King changed his plea, until he retained his second set of postconviction attorneys on August 18, 2023, the delay for filing this second motion to withdraw his plea amounts to over 15 months. The Tenth Circuit has held that delays of three months and four months weigh against granting a motion to withdraw a guilty plea. *United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996) (three-month delay weighed against the defendant because delays of this length "often result in substantial prejudice to the government and may

suggest manipulation by the defendant"); *United States v. Hasson*, 287 F. App'x 712, 717 (10th Cir. 2008) (unpublished) (delay of almost four months weighed against defendant).

The likelihood of conviction factor also weighs against granting leave to withdraw. Importantly, King has not asserted his innocence. King's only realistic defense at trial would be to cast doubt on the government's assertion that he was the individual who transmitted the child pornography to the undercover agent. The government, however, has overwhelming evidence that King was the person who sent the images, including: (1) Kik, Verizon, and Comcast records linking the Kik account to King's email address and home address; (2) the Kik profile picture depicting a torso with a distinctive tattoo that King has in the same location; (3) the "Louis King" screen name; and (4) King's admission in the Statement in Advance of Plea and during the plea colloquy that he sent the images.[4]

Thus, King's delay in seeking to withdraw his plea and the likelihood of a conviction further support the denial of King's second motion to withdraw his plea.

---

[4] The court specifically notified King that his admissions during the plea colloquy would be admissible at trial if he withdrew his guilty plea:

> THE COURT: . . . I will be asking you some questions later on to find out if there [is] a factual basis for your guilty plea. And if you answer those questions and then later fail to fulfill your obligations under the plea agreement, of if you try and withdraw your guilty plea, any statements that you make to me later in this hearing about the facts of this case will be admissible at any trial, hearing, or other proceeding. Do you understand that?
>
> MR. KING: Yes, Your Honor.
>
> THE COURT: You won't be able to take back any admissions that you make today. Do you understand?
>
> MR. KING: Yes, Your Honor.

## CONCLUSION

For the above-stated reasons, the court denies King's second motion to withdraw his guilty plea.

DATED May 18, 2026.

BY THE COURT

Jill N. Parrish
United States District Court Judge